IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL KAUFFMAN, | |
| Plaintiff, | Case No. |
| vs. | **CLASS ACTION COMPLAINT** |
| U-HAUL INTERNATIONAL, INC., COLLEGEBOXES, LLC, and eMOVE, Inc., | **JURY TRIAL DEMANDED** |
| Defendants. | August 22, 2016 |

Plaintiff, Michael Kauffman ("Plaintiff" or "Kauffman"), by and through his attorneys, brings this class/collective action lawsuit, on behalf of himself and all others similarly situated (the "Class," as defined below), against Defendants, U-Haul International, Inc. ("U-Haul" or "UHII"), Collegeboxes, LLC ("Collegeboxes"), and eMove, Inc. ("eMove" or "Moving Help") (collectively, "Defendants" or "U-Haul"), and, except for information based on his own personal knowledge, alleges, on information and belief based on the investigation conducted by his counsel, as follows:

## NATURE OF ACTION

1.  Plaintiff brings this action seeking all available relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, *et seq.* ("PMWA"), and the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1, *et seq.* ("PWPCL"), as well as for unjust enrichment.

2. Plaintiff and Class members are and have been employed by U-Haul to provide moving services to customers throughout the United States, including in the Commonwealth of Pennsylvania. Despite retaining control over Plaintiff and Class members' work, U-Haul has misclassified them as independent contractors, denying them the wages and benefits to which they are lawfully entitled under federal and state law.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

4. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and Plaintiff and certain members of the Class are citizens of states different from that of Defendants.

5. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(ii) because a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this District, and Defendants conduct significant business in this District.

7. This Court has personal jurisdiction over Defendants because they have purposefully availed themselves of the privileges of conducting their business activities in the Commonwealth of Pennsylvania, established minimum contacts sufficient to confer jurisdiction over them, and the assumption of jurisdiction over Defendants will not offend traditional notions

of fair play and substantial justice. The exercise of jurisdiction over Defendants is, therefore, consistent with the constitutional requirements of due process.

## PARTIES

8. Plaintiff is, and, at all times relevant to this action has been, a resident of Berks County, Pennsylvania, and, thus, is a citizen of Pennsylvania. During his employment at U-Haul, Plaintiff performed moving services work for U-Haul at various locations throughout Pennsylvania.

9. Defendant, UHII, is a Nevada corporation with its principal place of business located at 2727 North Central Avenue in Phoenix, Arizona. UHII regularly conducts business throughout the United States, including in this District.

10. Defendant, Collegeboxes, is a Massachusetts corporation with its principal place of business at 2727 North Central Avenue in Phoenix, Arizona. Collegeboxes was acquired by UHII in 2010 and is wholly owned and operated by UHII and regularly conducts business throughout the United States, including in this District.

11. Defendant, eMove, is a Nevada corporation with its principal place of business at 2727 North Central Avenue in Phoenix, Arizona. eMove regularly conducts business throughout the United States, including in this District.

12. Although eMove and Collegeboxes purport to be separate from UHII, in reality, UHII, eMove and Collegeboxes are one and the same company since they act as an integrated enterprise, alter egos of each other and as a single or joint employer: that is, U-Haul.

13. All three entities have the same common ownership and management, share the same employees, operate from common headquarters, share the same call center, and pool from the same resources.

14. All three entities advertise together on the same websites and at the same physical locations. For instance, U-Haul promotes Collegeboxes' storage and shipping services on its website. Additionally, eMove brochures and stickers are placed at stores and on trucks displaying the "U-Haul" logo.

15. All three entities provide the same moving labor services to their customers, have an interrelation of operations between them, and share a common business purpose.

16. Indeed, the process by which movers like Plaintiff and Class members apply to work for Collegeboxes or eMove includes many references to U-Haul, including references to a partnership relationship among the entities, as well as to "U-Haul University," an online training module that movers must undergo upon completing their application.

17. On its website, Collegeboxes clearly advertises its partnership with UHII and eMove, and it visibly promotes the fact that it works with UHII and eMove to provide shipping and storage services around the country under the U-Haul company name.

18. From the customer's perspective as well, the lines between U-Haul, Collegeboxes, and eMove are, at best, blurred and opaque. Although customers can order moving services through U-Haul's and eMove's websites, respectively, U-Haul's website contains a "Moving Labor" page that states: "Moving Helpers® in your area (brought to you by MovingHelp.com®)." When customers request moving services through U-Haul's website, the transaction is completed on U-Haul's website and customers are not redirected to eMove's

website or to a separate eMove representative.  Similarly, customers may purchase boxes and other storage materials that are provided by Collegeboxes from U-Haul's website without being redirected to another website.

19.     Accordingly, UHII, Collegeboxes, and eMove constitute a single enterprise and they are each liable for the alleged violations of the other.

## SUBSTANTIVE ALLEGATIONS

### A.     U-Haul's Moving Services

20.     Customers typically book U-Haul's moving services on U-Haul's, Collegeboxes', or eMove's website, which are integrated with each other.  When a customer visits any of their websites, the customer is asked to enter a zip code, a date of move, and a time of day for the move (*i.e*., morning, afternoon, or evening).  The customer is then directed to a page that lists various movers in ranked order of customer-rating, each with a listed price based upon a default setting of two movers for two hours. The customer must proactively choose to edit the number of movers or amount of time needed if the customer wishes to do so.  Upon completing the booking, the customer is provided with a six-digit code to give to the movers when the job is done.  The six-digit code enables the movers to trigger payment for the completed work order.

21.     U-Haul provides its movers with a Global Cash Card, which is a paperless payroll mechanism that U-Haul uses to send payment to its movers for completed work orders.  When a work order is complete and the mover receives the six-digit code from the customer, the mover simply enters the code into the online account associated with the mover's Global Cash Card and payment from U-Haul is instantaneously sent to the account.  Work order numbers and corresponding payment amounts are captured in a mover's Global Cash Card account history.

**B.     U-Haul's Misclassification Of Plaintiff And Class Members As Independent Contractors**

22.     Plaintiff was employed by U-Haul to provide moving services between approximately December 2010 and September/October 2015.  Plaintiff completed an estimated 5,700 moves for U-Haul during this time frame, and approximately 90% to 95% of the total moving services he performed was for U-Haul.  From his first day of work until the termination of his employment with U-Haul, Plaintiff was classified as an independent contractor by U-Haul, but treated as an employee.

23.     At all relevant times herein, U-Haul paid Plaintiff and Class members as independent contractors.

24.     Notwithstanding that U-Haul misclassified Plaintiff and Class members as independent contractors, they were employees of U-Haul, in that U-Haul directly and indirectly managed and controlled all aspects of their employment – from, *inter alia*, the employee application process, to work assignments, to training and guidelines for the performance of work, to the evaluation of completed work, to the amount and payment of wages for work performed (including unilateral deductions imposed by U-Haul), and to disciplinary action.

25.     As a precondition of employment, Plaintiff and Class members were not allowed to have their own equipment or trucks, their own business, or their own website.  They were also not permitted to utilize any customer reviews to advertise or otherwise promote themselves, since U-Haul deemed such reviews to be its property.

26.     U-Haul also required Plaintiff and Class members to use its equipment.

27.     For every work order completed by Plaintiff and Class members, U-Haul unilaterally deducted 15% as payment for itself.

28.     U-Haul assigned Plaintiff and Class member work assignments through email or text notifications.  U-Haul assigned work orders seven days a week, and Plaintiff and Class members had no ability to accept or reject a work order.  Upon receiving the assignment, the only information provided to Plaintiff and Class members was the customer's zip code, the date of the move, and whether the move would take place in the morning, afternoon, or evening.  U-Haul required Plaintiff and Class members to directly contact the customer within 24 hours of the assignment to confirm the move and obtain the additional information needed to complete the move, such as the customer's address.  If Plaintiff and Class members failed to reach the customer within 24 hours, they risked suspension or termination by U-Haul.  Plaintiff and Class members also exposed themselves to the risk of the customer cancelling the work order and leaving a negative review, thus adversely affecting their review rating and causing U-Haul to push them further down the display list on U-Haul's website.  Consequently, Plaintiff and Class members were effectively bound to take and complete each work assignment from U-Haul, or else risk losing future work.

29.     Upon assigning work orders, U-Haul also controlled and managed the completion of work orders.  Plaintiff and Class members were required to check their schedules and "to-do" lists on their home page located on U-Haul's website.  Plaintiff and Class members were also given specific protocols and procedures relating to, *inter alia*, their interaction with clients and their use of equipment (including U-Haul's equipment), which they were required to follow.

30. U-Haul maintained aggressive quality control of each work order completed by Plaintiff and Class members. U-Haul regularly monitored Plaintiff and Class members for cancellations and no-shows. U-Haul also regularly monitored Plaintiff and Class members for charging additional fees to customers. U-Haul actively discouraged Plaintiff and Class members from deviating from the rate booked by the customer on U-Haul's website, even when jobs took much longer than the customer projected or exceeded the scope of the order because, for example, the customer delayed the start time, did not do any packing, or left their home and belongings in poor or unsafe condition.

31. This practice was particularly problematic because customers typically opted for U-Haul's "two movers for two hours" default setting at the time of booking, forcing Plaintiff and Class members to accept much less payment for their services than the time they actually worked, as the move lasted longer than the two hours and required more labor.

32. To ensure compliance with its cancellation, no-shows, and additional customer charges policy, U-Haul disciplined Plaintiff and Class members through actual (or threatened) suspension and/or termination.

### C. U-Haul's Overtime Violations

33. During the course of their employment, Plaintiff and Class members were paid at a flat rate for each work order, minus the 15% automatically deducted by U-Haul. The payment structure was determined and enforced by U-Haul.

34. Plaintiff and Class members regularly worked more than 40 hours a week performing moving services for U-Haul. However, Plaintiff and Class members were never paid overtime for any time they worked beyond 40 hours a week.

35. U-Haul was at all times aware that Plaintiff and Class members worked overtime, but it refused to pay them any overtime wages.

## CLASS ACTION ALLEGATIONS

36. Plaintiff brings this action as a class action, pursuant to Fed. R. Civ. P. 23(a) and (b)(1), (b)(2) and/or (b)(3), on behalf of himself and all other similarly situated employees.

37. The Class that Plaintiff seeks to represent for Defendants' violations of the FLSA ("FSLA Class") is defined as follows:

> All individuals who are performing or have performed moving services for Defendants, from three years prior to the date of the filing of this original Complaint through the entry of judgment in this case (the "Relevant Period").

38. The Class that Plaintiff seeks to represent for Defendants' violations of Pennsylvania's labor statutes ("Pennsylvania Class") is defined as follows:

> All individuals who are performing or have performed moving services for Defendants in Pennsylvania, during the Relevant Period.

The Nationwide Class that Plaintiff seeks to represent for Defendants' violations of the FLSA and the Pennsylvania Class for violation of Pennsylvania labor statutes are defined, collectively, as the "Class" or the "Classes."

39. <u>Numerosity/Impracticability of Joinder</u>: The members of the Classes are so numerous that joinder of all members is impracticable. The exact number of the members of the Class is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery.

40. <u>Commonality and Predominance</u>:  This action is properly brought as a class action because of the existence of questions of law and fact common to the Classes.  Common questions of law and fact include, but are not limited to, the following:

(a) Whether Plaintiff and Class members were improperly classified as independent contractors by Defendants;

(b) Whether Defendants failed to pay Plaintiff and Class members all of the overtime wages they are owed, in violation of the FLSA and Pennsylvania law; and

(c) Whether Defendants are liable for all damages claimed hereunder, including, but not limited to, compensatory, liquidated, punitive and statutory damages, interest, costs and attorneys' fees.

41. <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, Plaintiff and all members of the Classes have sustained monetary damages arising out of Defendants' violations of law, as alleged herein.

42. <u>Adequacy of Representation</u>:  Plaintiff will fairly and adequately protect the interests of the members of the Classes because his interests do not conflict with the interests of the Class members he seeks to represent.  Plaintiff has retained highly competent counsel who are experienced in the fields of wage and hour law and class action litigation and that possess the requisite resources and ability to vigorously prosecute this case as a class action.  The interests of the Classes will be fairly and adequately protected by Plaintiff and his counsel.

43. <u>Superiority</u>:  A collective action is superior to all other available means for the fair and efficient adjudication of this controversy.  Most of the Class members would not be likely to file individual lawsuits because they lack adequate financial resources, access to

attorneys or knowledge of their claims, because the damages suffered by individual Class members may be relatively small, and because the expense and burden of individual litigation would make it impossible for such persons individually to redress the wrongs done to them. Individualized litigation presents a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct.

44. Without a class action, Defendants will likely retain the benefit of their wrongdoing and will continue a course of action which will result in further damages to Plaintiff and Class members.

45. Plaintiff currently is unaware of the identification of all the Class members, as such information is within the sole control of Defendants. Accordingly, Defendants should be required to provide to Plaintiff a list of all persons who were employed by Defendants and performed moving services during the Relevant Period, stating their last known address and telephone numbers, so that Plaintiff may give such persons notice of the pendency of this action and an opportunity to make an informed decision about whether to participate.

**COUNT I**
**VIOLATION OF THE FLSA**
**29 U.S.C. § 201, *et seq*.**
**(On Behalf of Nationwide Class)**

46. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

47. At all relevant times, Defendants have been employers within the meaning of 3(d) of the FLSA.  *See* 29 U.S.C. § 203(d).

48.     At all relevant times, Defendants have been an enterprise within the meaning of 203(r) of the FLSA.  *See* 29 U.S.C. § 203(r).

49.     At all relevant times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 3(s)(1) of the FLSA because Defendants have had employees engaged in commerce.  *See* 29 U.S.C. § 203(s)(1).

50.     At all relevant times, Plaintiff and Nationwide Class members were employees who engaged in commerce or in the production of goods for commerce as required by Section 207 of the FLSA.  *See* 29 U.S.C. § 207.

51.     Defendants have had, and continue to have, an annual gross business volume in excess of the statutory standard of $500,000.

52.     Pursuant to Section 207 of the FLSA, Defendants were and are obligated to pay Plaintiff and Nationwide Class members, as non-exempt employees, at a rate equal to one and one-half times their normal hourly rate of pay for all time spent performing compensable work in excess of 40 hours per week.  *See* 29 U.S.C. § 207.

53.     Pursuant to the Section 216(b) of the FLSA, Defendants, because they failed to pay Plaintiff and Nationwide Class members the required amount of overtime at the statutory rate, must reimburse Plaintiff and Nationwide Class members not only for their unpaid overtime wages, but also for liquidated damages in an amount equal to the amount of unpaid overtime wages.  *See* 29 U.S.C. § 216(b).  Defendants' refusal to pay Plaintiff and Class members for time worked was willful.

54.     WHEREFORE, Plaintiff prays for the following relief against Defendants:

      A.      That the Court permit this action to go forward as a representative action pursuant to 28 U.S.C. § 216(b) and approve notice of this action to all other similarly situated individuals who are current or former employees of Defendants;

      B.      That this Court Order an accounting of lost wages for Plaintiff and Nationwide Class members;

      C.      That this Court enjoin Defendants from continuing to commit unlawful practices related to wages as alleged herein; and

      D.      That this Court award lost overtime wages, liquidated damages, all other available statutory relief, including, *inter alia*, interest, and any other relief the Court deems appropriate.

## COUNT II
## VIOLATION OF THE PMWA
## 43 P.S. § 333.101, *et seq*.
## (On Behalf of Pennsylvania Class)

55.      Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

56.      Defendants are employers covered by the overtime pay mandates of the PMWA, and Plaintiff and Pennsylvania Class members are employees entitled to the PMWA's protections.

57.      The PMWA requires that employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in a workweek.  *See* 43 P.S. § 333.104(c).

58. While the PMWA contains certain exemptions from its overtime and minimum wage requirements, *see* 43 P.S. § 333.105(a)-(b), these exemptions do not apply to Plaintiff and the Pennsylvania Class.

59. Defendants violated the PMWA by failing to pay Plaintiff and the Pennsylvania Class compensation calculated at the legally mandated overtime premium for hours worked over 40 during the workweek.

## COUNT III
## VIOLATION OF THE PWPCL
## 43 P.S. § 260.1, *et seq*.
## (On Behalf of Pennsylvania Class)

60. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

61. There existed between Defendants, on the one hand, and Plaintiff and similarly situated employees, on the other hand, a contractual agreement and/or promise to pay wages and overtime. Defendants breached these agreements by failing to pay all wages due to their employees.

62. Defendants have intentionally failed to pay the wages to Plaintiff and the Pennsylvania Class, in violation of Pennsylvania Code, 43 P.S. § 260.3.

63. Defendants are not permitted by state or federal law, or by order of a court of competent jurisdiction, to withhold or divert any portion of Plaintiff's and Class members' wages that concern this lawsuit.

64. Defendants do not have written authorization from Plaintiff or the Pennsylvania Class members to withhold, divert, or deduct any portion of their wages that concern this lawsuit.

65. Pursuant to 43 P.S. §§ 260.9a and 260.10, employers, such as Defendants, who intentionally fail to pay an employee wages in conformance with the PWPCL, shall be liable to the employee for the wages or expenses that were intentionally not paid, as well as liquidated damages, Court costs and attorneys' fees and expenses incurred in recovering the unpaid wages.

66. Defendants have violated the PWPCL by failing to pay Plaintiff and the Pennsylvania Class for all compensable time and by failing to pay Plaintiff and the Pennsylvania Class members for all work time, including overtime, at the promised rate and pursuant to the agreement to pay wages.

## COUNT IV
## UNJUST ENRICHMENT
### (On Behalf of Pennsylvania Class)

67. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

68. In the alternative, Defendants have received and benefitted from the uncompensated labor of Plaintiff and the Pennsylvania Class, such that to retain said benefit without compensation would be inequitable and rise to the level of unjust enrichment.

69. At all relevant times, Defendants devised and implemented a practice to increase their earnings and profits by fostering a scheme of securing work from Plaintiff and the Pennsylvania Class without paying overtime compensation for all hours worked.

70. By reason of having secured the work and efforts of Plaintiff and the Pennsylvania Class without paying overtime compensation, Defendants enjoyed reduced overhead with respect to their labor costs, therefore realizing additional earnings and profits for their own benefit and to the detriment of Plaintiff and the Pennsylvania Class. Defendants retained and continue to

retain such benefits contrary to the fundamental principles of justice, equity, and good conscience.

71.     Accordingly, Plaintiff and the Pennsylvania Class are entitled to judgment in an amount equal to the benefits unjustly retained by Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendants as follows:

A.     Designation of this action as a class/collective action pursuant to Fed. R. Civ. P. 23 and appointing Plaintiff's counsel as Class Counsel to represent the Class;

B.     Appointment of Plaintiff as the Class Representative for the Classes;

C.     Compensatory damages, including actual damages, arising from Defendants' wrongful and illegal conduct;

D.     An accounting by Defendants to Plaintiff of the amount of damages incurred by him and Class members;

E.     Injunctive and declaratory relief;

F.     An award of liquidated damages, interest, and monetary penalties to Plaintiff and Class members to the fullest extent permitted under the law;

G.     An award of litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law;

H.     Pre-judgment and post-judgment interest as may be allowed by law; and

I.     For such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATED:   August 22, 2016          Respectfully submitted,

SHEPHERD, FINKELMAN, MILLER & SHAH, LLP

*s/James C. Shah*
James C. Shah (PA Bar No. 80337)
Natalie Finkelman Bennett (PA Bar No. 57197)
35 East State Street
Media, PA 19063
Telephone: (610) 891-9880
Facsimile: (866) 300-7367
Email:   jshah@sfmslaw.com
             nfinkelman@sfmslaw.com

 SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
James E. Miller (PA Bar No. 64280)
Laurie Rubinow
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (866) 300-7367
E-mail:   jmiller@sfmslaw.com
              lrubinow@sfmslaw.com

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
Thomas E. Duckworth
Monique Olivier
100 Bush Street, Suite 1800
San Francisco, CA 94104
Telephone: (415) 433-0333
Facsimile: (415) 449-6556
Email: tom@dplolaw.com
            monique@dplolaw.com