UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

MICHAEL KAUFFMAN,                              :
                                               :
                    Plaintiff,                 :
                                               :
              v.                               :          No. 5:16-cv-04580
                                               :
U-HAUL INTERNATIONAL, INC.;                    :
COLLEGEBOXES, LLC; and eMOVE, INC.,            :
                                               :
                    Defendants.                :
_____

**O P I N I O N**

**Defendants' Motion to Compel Arbitration and Dismiss Plaintiff's Complaint,
ECF No. 5 – Granted in part**

**Joseph F. Leeson, Jr.**                                        **August 27, 2018**
**United States District Judge**

I.       **Introduction**

        Plaintiff Michael Kauffman has filed a class action lawsuit against Defendants U-Haul

International ("U-Haul"), Collegeboxes, LLC, and eMove, Inc. Kauffman alleges that he worked

as a mover for Defendants from December 2010 until fall 2015 and that they failed to pay him

and other similarly-situated movers overtime wages, in violation of the Fair Labor Standards Act

and Pennsylvania law. Defendants have filed a motion to compel arbitration of Kauffman's

claims and to dismiss his Complaint. For the reasons set forth below, the Court grants

Defendants' motion to compel arbitration but declines to dismiss the action at this time and,

instead, will stay the action pending arbitration.

## II.     Background

## A.     Factual Background

Kauffman's Complaint alleges the following facts.

Kauffman, a resident of Berks County, Pennsylvania, formerly "performed moving services work for [Defendants] at various locations throughout Pennsylvania." Compl. ¶ 8. Customers booked these services by visiting the U-Haul, Collegeboxes, or eMove websites, which are integrated with each other. Compl. ¶ 20.[1]

When a customer visits any of these websites, the customer is asked to enter the date, time, and place of the move, after which the customer is directed to a page that lists various movers in order of customer rating, each with a listed price based upon a default setting of two movers for two hours. Compl. ¶ 20. The customer must "proactively choose" to edit the number of movers or amount of time needed if the customer wishes to do so. *Id.* Upon completing the booking, the customer receives a six-digit code to give to the movers when the job is done. *Id.*

A mover receives payment for his or her work through a "Global Cash Card" that Defendants provide to the mover. Compl. ¶ 21. When a work order is complete and the mover receives the six-digit code from the customer, the mover enters the code into the online account associated with the mover's Global Cash Card and payment from Defendants is sent to the account. *Id.* Work order numbers and corresponding payment amounts are captured in a mover's Global Cash Card account history. *Id.*

---

[1]     According to the Complaint, "[a]lthough eMove and Collegeboxes purport to be separate from [U-Haul], in reality, [U-Haul], eMove and Collegeboxes are one and the same company since they act as an integrated enterprise, alter egos of each other and as a single or joint employer: that is, U-Haul." Compl. ¶ 12. The Complaint alleges that Defendants "constitute a single enterprise and they are each liable for the alleged violations of the other." Compl. ¶ 19.

Kauffman alleges that Defendants misclassified him and other similarly-situated movers as independent contractors when, in fact, they were employees of Defendants in that the company "directly and indirectly managed and controlled all aspects of their employment," including work assignments, training and guidelines for the performance of work, the evaluation of completed work, the amount and payment of wages for work performed, and disciplinary action. Compl. ¶ 24. Further, Kauffman alleges that he and other similarly-situated movers regularly worked more than forty hours per week but were never paid any overtime, in violation of Fair Labor Standards Act and Pennsylvania law. Compl. ¶ 34.

**B.     Procedural History**

In response to Kauffman's Complaint, Defendants filed the present Motion to Compel Arbitration pursuant to the Federal Arbitration Act, contending that Kauffman's claims are subject to a binding arbitration agreement contained in an "eMove Moving Help – Moving Helper Agreement" ("the Agreement" or "the eMove Agreement") that Kauffman agreed to in 2013. The arbitration clause in the Agreement reads as follows:

> You and Us agree that because this Agreement affects and involves interstate commerce, the Federal Arbitration Act, 9 U.S.C. Section 1, et seq., shall govern this arbitration provision. You and Us agree that any and all disputes, lawsuits, legal controversies, legal actions or legal claims (all collectively an "Action") arising out of or relating to this Agreement shall be settled by mandatory and binding arbitration.
>
> The arbitration shall be conducted in accordance with the Commercial Rules of the American Arbitration Association ("AAA"). The findings of the arbitrator may not change the express terms of this Agreement and shall be consistent with the arbitrator's understanding of the findings a court of proper jurisdiction would make in applying the applicable law to the facts underlying the dispute. . . . This provision for arbitration shall be specifically enforceable by the parties and the decision of the arbitrator shall be binding. Each party shall pay its own expenses of arbitration and the expense of the arbitrator shall be shared equally.

YOU AND US EXPRESSLY AGREE THAT ANY ACTION SHALL BE BROUGHT AND ARBITRATED ONLY ON AN INDIVIDUAL PERSON OR INDIVIDUAL ENTITY BASIS AND NOT ON A CLASS, COLLECTIVE OR REPRESENTATIVE BASIS. YOU AND US AGREE THAT THE ARBITRATOR HAS THE AUTHORITY TO AWARD RELIEF ONLY ON AN INDIVIDUAL PERSON OR INDIVIDUAL ENTITY BASIS.

Both parties agree that if a party files any Action contrary to this provision, the other party can recover reasonable attorney fees and reasonable costs resulting from those efforts necessary to challenge that filing and bring the Action back in accordance with the terms of this provision.

LoPresti Decl., Ex. A at ¶ 14, ECF No. 5-2. In view of this clause, Defendants contends that the Court should compel Kauffman to litigate his claims on an individual basis before the AAA. In response to Defendants' motion, Kauffman contends that the arbitration clause in the eMove Agreement is unenforceable for a number of reasons.

## III.    Legal Standard – Motion to Compel Arbitration

In *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 767 (3d Cir. 2013), the United States Court of Appeals for the Third Circuit "clarif[ied] the standards to be applied to motions to compel arbitration, identifying the circumstances under which district courts should apply the standard for a motion to dismiss, as provided by Rule 12(b)(6) of the Federal Rules of Civil Procedure, and those under which they should apply the summary judgment standard found in Rule 56." "[W]hen it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.'" *Id.* at 776 (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). But "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then "the parties should be entitled to discovery on the question

of arbitrability before a court entertains further briefing on [the] question.'" *Id.* (quoting *Somerset Consulting*, 832 F. Supp. 2d at 482).

In this case, because the Court finds that it is apparent based on the face of the Complaint and the documents relied upon therein that Kauffman's claims are subject to an enforceable arbitration clause, the Court applies the Rule 12(b)(6) standard. Under this standard, a court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

## IV.    Analysis

Kauffman contends that the arbitration clause in the eMove Agreement is unenforceable for four reasons. First, Kauffman contends that the arbitration clause is unenforceable because the eMove Agreement is a "contract of employment" and he belongs to a class of workers—namely, transportation workers—whose employment contracts are exempt from the Federal Arbitration Act. *See* 9 U.S.C. § 1 (exempting from the FAA "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce"). Second, he contends that the arbitration clause is unenforceable under both the FAA and Pennsylvania law because it is procedurally and substantively unconscionable and prevents him from effectively vindicating his rights. Third, he contends that his claims in this action are outside the scope of the arbitration clause. And fourth, Kauffman contends that U-Haul and Collegeboxes cannot enforce the arbitration clause because they are "non-signatory

third-parties" and the eMove Agreement includes an "express third-party disclaimer." Pl.'s Mem. Opp'n 5, ECF No. 13. The Court considers each of these contentions in turn.[2]

**A.    The Court need not decide whether the eMove Agreement is enforceable under the Federal Arbitration Act.**

The Federal Arbitration Act was adopted by Congress in 1925 "in response to a perception that courts were unduly hostile to arbitration." *Epic Sys.*, 138 S. Ct. at 1621. "[I]n Congress's judgment arbitration had more to offer than courts recognized," and so "Congress directed courts to abandon their hostility and instead treat arbitration agreements as 'valid, irrevocable, and enforceable.'" *Id.* (quoting 9 U.S.C. § 2). The FAA extends to all contracts "evidencing a transaction involving commerce," or arising from a "maritime transaction." 9 U.S.C. § 2. But Section 1 of the FAA creates an exemption for "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. As indicated above, Kauffman contends that (1) he is a "worker[] engaged in foreign or interstate commerce" and (2) the eMove Agreement is a "contract of employment" and that, as a result, the FAA does not apply to the eMove Agreement and cannot be relied upon by Defendants to enforce the Agreement's arbitration clause.

First, with respect to whether Kauffman is a "worker[] engaged in foreign or interstate commerce," the United States Supreme Court held in *Circuit City Stores, Inc. v. Adams*, 532 U.S.

---

[2]    In addition to these four arguments, Kauffman had initially offered a fifth argument for the arbitration clause's unenforceability, namely that the clause violated the National Labor Relations Act (NLRA) by requiring Kauffman to waive his right to class or collective action. In September 2017, the Court stayed this matter pending the United States Supreme Court's decision in *Epic Systems Corporation v. Lewis*, 138 S. Ct. 1612 (2018), which addressed the question of whether class and collective action waivers in arbitration agreements violate the NLRA. The Supreme Court issued its decision in *Epic Systems* in May 2018, holding that such waivers do not violate the NLRA. Kauffman acknowledges that in light of the Supreme Court's decision in *Epic Systems*, his NLRA-based argument is now meritless. *See* Pl.'s Supp. Br., ECF No. 32.

105 (2001), that this exemption applies only to "transportation workers." *Id.* at 119.[3] After

*Circuit City*, the Court of Appeals for the Third Circuit in *Palcko v. Airborne Express, Inc.*, 372

F.3d 588, 593 (3d Cir. 2004), reiterated its earlier holding in *Tenney Engineering, Inc. v. United*

*Electrical Radio & Machine Workers of America*, 207 F.2d 450 (3d Cir. 1953), that the § 1

residual clause includes "only those other classes of workers who are actually engaged in the

movement of interstate or foreign commerce or in work so closely related thereto as to be in

practical effect part of it." *Palcko*, 372 F.3d at 593 (3d Cir. 2004) (quoting *Tenney*, 207 F.2d at

452).[4] Here, Defendants contend that because Kauffman's role as a "moving helper" at most

only incidentally involved transporting goods interstate, he cannot be regarded as a

"transportation worker" under the FAA. Kauffman responds that he was, in fact, a

"transportation worker" because he "physically and directly provided the moving services for

Defendants, which was an integral part of the transportation services Defendants offered." Pl.'s

Mem. Opp'n 7, ECF No. 13.[5]

---

[3]     The Court explained that although "the legislative record on the § 1 exemption is quite sparse," it is "reasonable to assume" that Congress excluded "seamen" and "railroad employees" from the FAA because by the time the FAA was passed, Congress had already enacted federal legislation governing the disputes of these specific workers and did not want to unsettle this legislation. *Id.* at 119-121. Accordingly, the residual exclusion of "any other class of workers engaged in foreign or interstate commerce," should be understood in light of "Congress' demonstrated concern with transportation workers and their necessary role in the free flow of goods." *Id.* at 121.

[4]     Applying this standard, the *Palcko* court held that the exemption applied to an employee who worked as a "Field Services Supervisor" at Airborne Express, a "package transportation and delivery company that engages in intrastate, interstate, and international shipping." *Id.* at 590. The court explained that although the plaintiff, as a management employee, did not herself physically transport packages across state lines, her "direct supervision of package shipments" made her work "'so closely related [to interstate and foreign commerce] as to be in practical effect part of it.'" *Id.* at 593 (quoting *Tenney*, 207 F.2d at 452)

[5]     Kauffman's Complaint does not describe the nature of his work as a mover or "moving helper" in any detail, except to allege that he completed approximately 5,700 moves from 2010 to 2015. In a declaration that Kauffman submitted with his response to Defendants' motion, he states that "[i]n the course of my employment performing moving work for Defendants, [he had]

Second, with respect to whether the eMove Agreement was a "contract of employment," Defendants contend that under the terms of the eMove Agreement, Kauffman was an independent contractor, not an employee, and they point out that a number of district courts have determined that independent-contractor agreements are not "contracts of employment" under § 1.[6] Kauffman responds that the eMove Agreement is a "contract of employment," regardless of whether Kauffman was an independent contractor or employee, and, moreover, at this stage the Court must accept as true Kauffman's allegations that he was an employee.[7]

The Court need not resolve these matters, however, because even if the eMove Agreement is exempt from the FAA, the Agreement's arbitration clause is nevertheless enforceable under Pennsylvania law, for the reasons explained below.

---

to, on occasion, drive Defendants' trucks across state lines, including traveling from Pennsylvania to New Jersey, Delaware, North Carolina, South Carolina, New York, and even Michigan once." Kauffman Decl. ¶ 8, ECF No. 13-1.

[6]      The Court of Appeals for the First Circuit recently declined to join this "judicial chorus" and instead held that an "Independent Contractor Operating Agreement" made between a truck driver and an interstate trucking company was a "contract of employment" under § 1. *See Oliveira v. New Prime, Inc.*, 857 F.3d 7 (1st Cir. 2017). The court determined that the "ordinary meaning" of the phrase "contracts of employment" at the time of the FAA's enactment was simply "agreements to do work," and that the phrase therefore includes agreements by both employees and independent contractors. *Id.* at 20, 22. The *Oliveira* case is currently pending review by the U.S. Supreme Court, which granted the defendant's petition for writ of certiorari in February 2018.

[7]      Courts have differed in their approaches to determining whether a given agreement is a "contract of employment" for the purposes of the FAA. A number of courts have held that "the economic reality of the parties' relationship—a highly factual question—determines employment status, not a contractual label." *See Diaz v. Michigan Logistics Inc.*, 167 F. Supp. 3d 375, 380 (E.D.N.Y. 2016). Accordingly, "[d]iscovery and a fact-intensive analysis [are] required for a determination" of whether an agreement is a "contract of employment." *Id. But see In re Swift Transportation Co. Inc.*, 830 F.3d 913, 920 (9th Cir. 2016) (Ikuta, J., dissenting) ("Determining whether a contract qualifies as a 'contract of employment' requires a categorical approach that focuses solely on the words of the contract and the definition of the relevant category.").

**B.     Even if the eMove Agreement is exempt from the FAA, it is nevertheless enforceable under Pennsylvania law.**

Defendants contend that even if the eMove Agreement is exempt from the FAA's coverage, the Agreement is nevertheless enforceable under Pennsylvania law. Kauffman contends that the arbitration clause cannot be enforced under Pennsylvania law for two reasons. First, Kauffman contends that because the eMove Agreement provides only that the arbitration clause will be enforced under the FAA and lacks a "state law contingency clause," there is no basis to enforce the clause under Pennsylvania law. Second, Kauffman contends that the clause is procedurally and substantively unconscionable under Pennsylvania law. The Court considers each issue in turn.

**i.     The arbitration clause can be enforced under state law in the absence of a "state law contingency clause."**

In *Palcko*, the Third Circuit held that arbitration agreements that are unenforceable under the FAA may nevertheless be enforceable under state law. 372 F.3d at 596. Specifically, the *Palcko* court held that although the plaintiff's employment contract was exempt from the FAA under § 1 (because the plaintiff was a "transportation worker"), the arbitration clause in her contract was nevertheless enforceable under Washington state law.

As Kauffman points out, the arbitration clause at issue in *Palcko* "itself envisioned the possibility that [the] employment contract would be deemed exempt from the FAA's coverage under section 1 of the Act" and provided for that contingency by including the following provision: "To the extent that the Federal Arbitration Act is inapplicable, Washington law pertaining to agreements to arbitrate shall apply." *See Palcko*, 372 F.3d at 596. By contrast, the eMove Agreement's arbitration clause simply provides that "the Federal Arbitration Act . . . shall govern this arbitration provision" and does not contain a state law contingency provision.

Kauffman contends that without such a provision, the eMove Agreement's arbitration clause cannot be enforced under state law.

But, as a number of courts have determined, an arbitration clause can be enforced under state law even in the absence of a state law contingency provision. *See Atwood v. Rent-A-Ctr. E., Inc.*, No. 15-CV-1023-MJR-SCW, 2016 WL 2766656, at *3 (S.D. Ill. May 13, 2016) (collecting cases). In *Atwood*, the arbitration clause at issue provided that the FAA governed the clause and made no mention of state law. The court found that the FAA did not apply because the plaintiff was a transportation worker, but that the clause was nevertheless enforceable under state law:

> [The plaintiff] did agree to arbitrate this dispute, and the fact that the Federal Arbitration Act doesn't apply only means that its enforcement mechanisms aren't available, not that the whole dispute can't be arbitrated by enforcing the contract through another vehicle (like state law). . . . That's true even when the contract says that the Federal Arbitration Act applies and mentions no other law—if the federal act doesn't apply, the agreement to arbitrate remains viable, and the only question becomes what state's law applies to the contract to arbitrate.

*Id.* In short, "the inapplicability of the FAA does not render the parties' arbitration provision unenforceable" where, as here, the "arbitration provision clearly demonstrates the parties' intent to arbitrate disputes." *See Diaz v. Michigan Logistics Inc.*, 167 F. Supp. 3d 375, 381 (E.D.N.Y. 2016). Accordingly, despite the absence of a state law contingency provision, the arbitration clause may be enforced under Pennsylvania law.[8]

## ii. The Agreement contains unconscionable terms, but these can be severed from the Agreement.

"Pennsylvania law, like federal law, favors the enforcement of arbitration agreements." *Kaneff v. Delaware Title Loans, Inc.*, 587 F.3d 616, 624 (3d Cir. 2009). Both Pennsylvania law and federal law "require that arbitration agreements be enforced as written and allow an

---

[8]     The parties do not dispute that Pennsylvania law applies to this action.

arbitration provision to be set aside only for generally recognized contract defenses, such as unconscionability." *Id.*

Under Pennsylvania law, "a contract or term is unconscionable, and therefore avoidable, when there was a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it." *Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 119–20 (Pa. 2007) (citing *Denlinger, Inc. v. Dendler*, 608 A.2d 1061, 1068 (Pa. Super. Ct. 1992)). Pennsylvania assigns the labels of "procedural" and "substantive" unconscionability to these two respective requirements. *See id.* at 119. Both must be present to find unconscionability, *see id.* at 199–20, 125; *Zimmer v. CooperNeff Advisors, Inc.*, 523 F.3d 224, 230 (3d Cir. 2008) (citing *id.* at 119–20), but the strength of one may outweigh the weakness of the other, *see Quilloin v. Tenet HealthSys. Phila., Inc.*, 673 F.3d 221, 230 (3d Cir. 2012) (observing that in *Salley*, the Pennsylvania Supreme Court "indicated that it might be appropriate to use a 'sliding-scale approach' so that 'where the procedural unconscionability is very high, a lesser degree of substantive unconscionability may be required' and presumably, vice-versa" (quoting *Salley*, 925 A.2d at 125)). "The burden of proof generally concerning both elements has been allocated to the party challenging the agreement, and the ultimate determination of unconscionability is for the courts." *Salley*, 925 A.2d at 119–20.

> a. **The arbitration clause is procedurally unconscionable to a degree.**

Under Pennsylvania law, "a contract is procedurally unconscionable where 'there was a lack of meaningful choice in the acceptance of the challenged provision.'" *Quilloin*, 673 F.3d at 235 (quoting *Salley*, 925 A.2d at 119). Further "[u]nder Pennsylvania law, a contract is generally considered to be procedurally unconscionable if it is a contract of adhesion," which is a "'standard-form contract prepared by one party, to be signed by the party in a weaker position,

usually a consumer, who adheres to the contract with little choice about the terms.'" *Id.* (quoting *Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1174, 1190 (Pa. 2010)). Factors the court must consider in determining whether the contract rises to the level of procedural unconscionability include: "the take-it-or-leave-it nature of the standardized form of the document, the parties' relative bargaining positions, and the degree of economic compulsion motivating the 'adhering' party." *Id.* at 235-36 (quoting *Salley*, 925 A.2d at 125 (alterations omitted)). "[C]ontracts cannot be deemed unconscionable 'simply because of a disparity in bargaining power.'" *Id.* at 235 (quoting *Witmer v. Exxon Corp.*, 434 A.2d 1222, 1228 (Pa. 1981)).

Here, Kauffman contends that the eMove Agreement is procedurally unconscionable for four reasons: (1) eMove is in a superior bargaining position to Kauffman, "who is unsophisticated and only has a GED"; (2) the Agreement was drafted entirely by eMove; (3) "the consequences of the Arbitration Provision were not explained to [Kauffman] when he signed it"; and (4) he "had no choice but to accept the terms of the eMove Agreement if he wished to perform work as a mover for eMove." Pl.'s Mem. Opp'n 25. Defendants respond that at the time Kauffman accepted the Agreement he was a successful mover who had worked for eMove for several years and, as evidenced by his communications with other movers on an online eMove message board, read and understood the Agreement.[9] Further, they contend that there is no evidence that Kauffman could not have taken his services elsewhere. Finally, they point out that the Agreement includes a provision permitting Kauffman to change its terms with eMove's

---

[9] Defendants point to several messages Kauffman wrote on the "eMove Messageboards" online forum, in which he discussed the eMove Agreement with other movers. *See* LoPresti Decl. Ex. 3, ECG No. 5-2. For example, in response to another mover's question about what changes had been made to the new agreement, Kauffman wrote, "doesn't seem like much basically what i got is you agree to . . . the new one and an arbitration clause that proba[b]ly just got reworded." *See id.*

consent, that the arbitration provision is in the same size type as the rest of the Agreement, and

that when Kauffman asked eMove questions about the Agreement, the company answered them.

Applying the "sliding-scale approach" suggested by the Pennsylvania courts, this Court

finds at least some degree of procedural unconscionability in this case. In particular, the eMove

Agreement is a contract of adhesion, as that term is defined by Pennsylvania law, and Kauffman

had significantly less bargaining power than eMove, a large corporation. Neither of these factors

is dispositive, however, and, as Defendants point out, there is evidence that Kauffman read and

understood the Agreement. *See Great W. Mortg. Corp. v. Peacock*, 110 F.3d 222, 229 (3d Cir.

1997) (determining, under New Jersey law, that an agreement was not procedurally

unconscionable because the plaintiff, although the weaker party, agreed to arbitration on three

different occasions, was a college graduate with a Business Administration degree, and did not

contend that she failed to read the document containing the arbitration agreement or that she was

coerced into signing). Accordingly, the Court finds that there is some degree of procedural

unconscionably present, although not in a sufficient degree to render the Agreement

unconscionable without more.

>    **b.**      **The arbitration clause includes substantively unconscionable provisions.**

Because the Agreement has a degree of procedurally unconscionability, the Court

considers whether the Agreement is substantively unconscionable. Kauffman argues that there

are three provisions in the arbitration clause that make the Agreement substantively

unconscionable. First, he contends that both the clause's cost-bearing provision—that "[e]ach

party shall pay its own expenses of arbitration and the expense of the arbitrator shall be shared

equally"—and the provision that the arbitration "shall be conducted in accordance with

Commercial Arbitration Rules of the American Arbitration Association" are unconscionable

because these provisions impose onerous costs on him. He points out that the AAA's Commercial Arbitration Rules impose on the party bringing the claim an initial filing fee of $750 (for claims up to $75,000) and a final fee of $800. *See* Pl.'s Request for Judicial Notice Ex. A, ECF No. 14-1.[10] Accordingly, Kauffman would incur fees of $1,550 just to file his claim, exclusive of hourly arbitrator fees, room rental fees, or other fees. By contrast, under the AAA's Employment Arbitration Rules, where the dispute arises out of an "employer plan"—that is, where the employer has drafted a standard arbitration clause for use with all its employees— the employee's fees are capped at $200, and the employer is responsible for the remaining filing fees, hearing room rental fees, arbitrator's compensation, and other expenses.[11] Kauffman has filed a declaration stating that since his employment with eMove ended he has been employed with a company working with concrete, in which position he earns approximately $700 per week, and that he does not have the financial resources available to pay the administrative costs of arbitration under the Commercial Arbitration Rules. *See* Kauffman Decl. ¶¶ 9-112, ECF No. 13-1. Further, Kauffman contends that the Agreement's requirement that he bear his own "expenses of arbitration" can be understood to require that he bear his own attorney fees, which is contrary to the one-way fee-shifting remedies provided by the federal and state laws under which he brings his claims.

Finally, the third provision Kauffman contends is unconscionable is the following: "[I]f a party files any Action contrary to this provision, the other party can recover reasonable attorney fees and reasonable costs resulting from those efforts necessary to challenge that filing." He

---

[10] Kauffman has filed a request for judicial notice of the rules set forth by the American Arbitration Association. ECF No. 14. This request is granted.

[11] The Employment Arbitration Rules provide that if the dispute arises out of an individually-negotiated employment agreement (instead of an "employer plan") then the fee schedule is similar to that imposed by the Commercial Arbitration Rules. *See* Pl.'s Request for Judicial Notice Ex. A, ECF No. 14-1

contends that this provision, like the cost-bearing provision, is contrary to the fee-shifting remedies provided in the statues under which he brings his claims.

Defendants respond that Kauffman has failed to show that the costs of arbitration are beyond his means.[12] Further, they contend that the provision that each party bear its own expenses does not prevent the arbitrator from awarding attorneys' fees to Kauffman, consistent with federal and state law, because the arbitration clause provides that the arbitrator's "findings . . . shall be consistent with the arbitrator's understanding of the findings a court of proper jurisdiction would make in applying the applicable law to the facts underlying the action." According to Defendants, this language "requires the arbitrator to award attorney's fees and costs to Plaintiff, consistent with federal and state law, if Plaintiff prevails in the arbitration on his wage and hour claims." Defs.' Reply Br. 14. Finally, with respect to the provision that Kauffman is required to pay eMove's fees if the latter prevails on the instant motion, Defendants contend that this type of contractual fee-shifting provision is enforceable under Pennsylvania law. *See id.* (citing *McMullen v. Kutz*, 985 A.2d 769, 776-77 (Pa. 2009)).

Kauffman is correct that the provisions to which he objects are unconscionable. First, the provision requiring the use of the Commercial Arbitration Rules and the provision that Kauffman pay his own expenses are unconscionable because, in view of his limited financial resources,

---

[12]     Defendants state that eMove is willing to cover Kauffman's arbitration filing fees and share of the arbitrator's fees, and to agree that the provisions of the applicable wage and hour statutes should govern the award of attorney's fees. Defs.' Reply Br. 16 n.5, ECF No. 19. The Court is not permitted to consider this offer, however, as part of its unconscionability analysis. *See Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 285 (3d Cir. 2004) ("[W]e must determine unconscionability as of the time the contract was formed, and an after-the-fact offer to waive certain contract provisions can have no effect on our analysis.").

these provisions would preclude him from pursuing arbitration.[13] *See Lytle v. CitiFinancial Servs., Inc.*, 810 A.2d 643, 668 (Pa. Super. Ct. 2002), a*brogated on other grounds by Salley v. Option One Mortg. Corp.*, 925 A.2d 115 (Pa. 2007) ("[A]n arbitration agreement may be stricken when the party opposing arbitration reasonably shows in law or equity that prohibitive costs are likely to render the arbitral forum inaccessible." (quoting *Mendez v. Palm Harbor Homes, Inc.*, 45 P.3d 594, 605 (Wash. App. Ct. 2002)); *see also Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 284 (3d Cir. 2004) (applying Virgin Islands law) ("[A]n arbitration provision that makes the arbitral forum prohibitively expensive for a weaker party is unconscionable."). The cost-bearing provision is unconscionable as well because, as Kauffman points out, it conflicts with fee-shifting provisions in the federal and state statutes under which he brings his claims. S*ee Quilloin*, 673 F.3d at 230–31 ("Provisions requiring parties to be responsible for their own expenses, including attorneys' fees, are generally unconscionable because restrictions on attorneys' fees conflict with federal statutes providing fee-shifting as a remedy."). The provision cited by Defendants—requiring that the arbitrator's "findings" be consistent with those of a court of proper jurisdiction—does not remedy this problem because the provision simply speaks to the arbitrator's "findings" but does not address the matter of expenses or fee awards.

Second, the requirement that Kauffman pay eMove's fees, should eMove be successful in the instant motion, is unconscionable because the combination of this provision with the requirement that Kauffman pay his own arbitration expenses places Kauffman in an impossible dilemma. An employee in Kauffman's position, with limited financial resources, would be faced

---

[13]     Defendants contend that Kauffman has provided insufficient evidence of his inability to pay the required arbitration expenses. But courts are not required "to undertake detailed analyses of the household budgets of low-level employees to conclude that arbitration costs in the thousands of dollars deter the vindication of employees' claims in arbitral fora." *See Giordano v. Pep Boys—Manny, Moe & Jack, Inc.*, No. CIV. A. 99-1281, 2001 WL 484360, at *6 (E.D. Pa. Mar. 29, 2001).

with, on one hand, incurring onerous arbitration expenses, should he wish to seek arbitration, and, on the other hand, incurring a potentially large bill for eMove's attorneys' fees, should he attempt to bring his claims before a court and fail to defeat a motion to compel arbitration. Although, under Pennsylvania law, contractual fee-shifting provisions are permissible, the results of this provision in this context render it unconscionable. *See McMullen v. Kutz*, 985 A.2d 769, 778 n.1 (Pa. 2009) (Saylor, J., concurring and dissenting) ("[I]t is beyond dispute that an unconscionable fee-shifting provision, or a provision yielding unconscionable results, should not be enforced according to its terms.").[14]

### c.  The unconscionable provisions can be severed from the arbitration clause.

Having determined that the Agreement is procedurally unconscionable to a degree and that the Agreement contains substantively unconscionable provisions, the Court considers whether those provisions can be severed from the Agreement. Kauffman contends that the unconscionable provisions cannot be severed from the Agreement for two reasons. First, he contends that the unconscionable provisions "permeate the [arbitration clause] and demonstrate eMove's intent to discourage employees . . . from pursuing claims against eMove." Pl's Mem. Opp'n 27. Second, he contends that even if the fee-splitting provision were severed from the Agreement, so long as the Commercial Arbitration Rules were still in place the arbitrator would not be precluded from apportioning fees equally between the parties or even imposing eMove's fees and expenses on Kauffman. Defendants respond that courts within this circuit have severed

---

[14]  Although Kauffman has not raised this issue, Defendants argue, correctly, that the class action waiver provision of the eMove Agreement is not unconscionable under Pennsylvania law because Kauffman has not shown that the waiver "effectively ensures that [Defendants] will never face liability for wrongdoing." *See Cronin v. CitiFinancial Servs., Inc.*, 352 F. App'x 630, 635 (3d Cir. 2009).

provisions of this type on a number of occasions, and they observe that the eMove Agreement explicitly includes a severability provision.

Under Pennsylvania law, a court may sever, or remove, an offensive term from a contract so long as doing so does not disturb the primary intent of the parties' agreement. As the Third Circuit stated in *Spinetti v. Service Corporation International*, 324 F.3d 212 (3d Cir. 2003), this principle of severability ensures that "[y]ou don't cut down the trunk of a tree because some of its branches are sickly." *Id.* at 213. Accordingly, in considering whether severance is appropriate, the court's task is to determine whether the offending portion of a given agreement constitutes simply an ancillary aspect of the agreement—a branch—or whether it constitutes "an essential part of the agreed exchange"—the trunk. *See id.* (quoting Restatement (Second) of Contracts § 184(1) (1981)); *see also Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 84–85 (D.C. Cir. 2005) (Roberts, J.) ("If illegality pervades the arbitration agreement such that only a disintegrated fragment would remain after hacking away the unenforceable parts . . . the judicial effort begins to look more like rewriting the contract than fulfilling the intent of the parties. . . . Thus, the more the employer overreaches, the less likely a court will be able to sever the provisions and enforce the clause. . . .").

In order to make this determination, the court must examine "the parties' *intent* at the time the agreement was executed, as determined from the language of the contract and the surrounding circumstances." *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 288 (3d Cir. 2004) (quoting *National Iranian Oil Co. v. Ashland*, 817 F.2d 326, 333 (5th Cir. 1987) (internal quotation marks omitted)) (applying Virgin Islands law). "The party urging the enforcement of the arbitration agreement 'must show that the essence, the essential term, of the bargain was to arbitrate, while [the unconscionable provisions were] merely a minor

consideration.'" *Id.* (quoting *National Iranian Oil*, 817 F.2d at 333-34). "Relevant to the intent issue is the presence or absence . . . of a contract provision calling for the severance of invalid provisions." *Id.*[15] "Moreover, in determining whether the party urging enforcement of arbitration has met this burden, a court, under *Spinetti*, must keep in mind the Congressional judgment[16] regarding the benefits of arbitration as well as the practical consequences of denying enforcement." *Id.*

Applying these considerations, courts have often found that cost and fee provisions in arbitration agreements do not constitute the essential part of the agreement. *See Spinetti*, 324 F.3d at 219 (affirming district court decision to sever unenforceable fee provisions in an employment arbitration agreement because "the primary purpose of the arbitration bargain entered into by [the parties] was not to regulate costs or attorney's fees" but rather "to provide a mechanism to resolve . . . disputes"); *Glenwright v. Carbondale Nursing Home, Inc.*, No. CV 3:16-0926, 2017 WL 1092541, at *7 (M.D. Pa. Mar. 23, 2017) (determining, "[i]n line with *Spinetti*," that the court was "able to sever the fee provisions in the parties' arbitration agreement without disturbing the intent of the parties to arbitrate their employment-related dispute"); *Kobren v. A-1 Limousine Inc.*, No. CV 16-516-BRM-DEA, 2016 WL 6594075, at *7 (D.N.J. Nov. 7, 2016) (severing a cost-splitting provision from an arbitration agreement between a driver and limousine company, and requiring the limousine company to bear the costs of arbitration and the amount of filing fees in excess of the cost of filing a complaint in federal court).

---

[15] Although relevant, the presence or absence of a severability clause is not dispositive. *See MacDonald v. CashCall, Inc*, 883 F.3d 220, 230 (3d Cir. 2018) (declining to sever an unconscionable provision "despite the inclusion of a severability clause in the contract").

[16] Or, as here, Pennsylvania's policy in favor of arbitration.

By contrast, in *MacDonald v. CashCall, Inc*, 883 F.3d 220 (3d Cir. 2018), the Third Circuit refused to sever a provision directing arbitration to an "illusory" forum—the Cheyenne River Sioux Tribe[17]—because the provision "was an integral, not ancillary, part of the parties' agreement to arbitrate." *Id.* at 230.[18] The court observed that the parties' agreement referenced the Tribe or its rules in most of the paragraphs concerning arbitration and that the agreement repeatedly reiterated that it was to subject to and governed solely by the Tribe's jurisdiction and law, all of which reflected that "the primary purpose of the [parties' agreement] was to arbitrate disputes subject to [the Tribe's] oversight and its laws." *Id.* at 231. In sum, the court determined that the agreement's forum selection clause, "viewed in the overall context of the agreement as a whole, differs markedly from the ancillary and discrete fee and cost, damages, and class action waiver provisions found to be severable" in other cases. *Id.* at 232 n.13.

In addition to the question of whether the unconscionable aspects of an arbitration clause constitute an essential part of the parties' agreement, the Third Circuit has identified a second, independent line of inquiry concerning severance that is particularly relevant in employment cases: "whether the unconscionability of the arbitration clause demonstrates 'a systematic effort to impose arbitration on an employee, not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage.'" *See Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 206 (3d Cir. 2010) (quoting *Parilla*, 368 F.3d at 288) (applying Virgin Islands law). Although the Third Circuit has typically applied this analysis to employment arbitration cases, the analysis

---

[17]    The forum was illusory because, although the Tribe itself exists, the Tribe does not authorize or conduct arbitration and, accordingly, could not serve as a forum for arbitration. *See id.* at 228.

[18]    The court in *MacDonald* applied New Jersey law, which like Pennsylvania law permits severance of contractual language only where doing so would defeat the central purpose of the contract. *See id.* at 230.

derives from the more general principle, articulated in the Restatement of Contracts, that even if disregard of illegal provisions will not defeat the primary purpose of the bargain, enforcement of the bargain will be denied if the person seeking it has been "guilty of serious moral turpitude" or "serious misconduct." *Id.* (quoting Restatement (First) of Contracts § 603; Restatement (Second) of Contracts § 184(1)).

For example, in *Nino* the Third Circuit declined to sever unconscionable provisions from an employment arbitration agreement when the provisions were "baldly one-sided, with only one discernable purpose—to create advantages for the employer that are not afforded to the employee." 609 F.3d at 207. The agreement included provisions permitting the employer to strike two members of the arbitration panel, while the employee could strike only one, and requiring the employee to file a detailed grievance within five days of the underlying events, while the employer was under no such obligation. *Id. See also Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 271 (3d Cir. 2003) (holding that severance was not an appropriate remedy where the agreement, in addition to imposing onerous costs, required employees to comply with an unreasonable time limitation that did not bind the employer and limited the employee's remedies. In these circumstances, the court concluded that "[b]ecause the sickness has infected the trunk, we must cut down the entire tree.").

Here, the Court finds that the primary purpose of the arbitration bargain entered into by the parties was not to regulate costs or attorney's fees but rather to provide a mechanism to resolve disputes. Accordingly, the unconscionable provisions—each of which concerns costs and fees—are "ancillary and discrete" and can be severed without disturbing the essential purpose of the arbitration clause. The fact that there are multiple unconscionable provisions does not change this analysis. *See Alexander*, 341 F.3d at 272 (Roth, J., concurring in part, dissenting in part)

("[T]he issue for purposes of severability analysis is not the number of unenforceable provisions, but rather whether those provisions go to the central purpose of the agreement."). Further, there is no evidence of serious misconduct or moral turpitude on eMove's part. As described above, the unconscionable aspects of the arbitration clause relate solely to fees, and the clause does not otherwise impose unfair or one-sided terms in favor of eMove, such as existed in *Nino* and *Alexander*.

Although the "loser-pays" provision and the fee-splitting provision can be easily excised from the arbitration clause, however, severance of the provision requiring application of the AAA Commercial Arbitration Rules requires a slightly more complicated procedure. The provision cannot be severed in its entirety because, in its absence, there would be no rules at all governing the arbitration. Nor should the provision be severed in its entirety, as it is unconscionable only with respect to its allocation of expenses and fees but is otherwise unobjectionable. Accordingly, the Court severs the provision requiring the application of the AAA Commercial Arbitration Rules only insofar as those rules require Kauffman to pay arbitration fees and costs.[19] The Court will direct that eMove pay all such fees and costs.[20]

## C.     Kauffman's claims are within the scope of the arbitration provision.

As quoted above, the arbitration clause applies to "any and all disputes, lawsuits, legal controversies, legal actions or legal claims . . . arising out of or relating to this Agreement." Kauffman contends that his claims in this case do not fall within the scope of the arbitration provision because his claims do not arise out of or relate to the Agreement. Defendants respond

---

[19]     As the Third Circuit observed in *Spinetti*, "[u]nder Pennsylvania law, 'a court of equity may not only remove an offensive term, but may supply a new, limiting term and enforce the covenant so modified. This unique power to modify the parties' contract . . . arises from the general equity powers of the court.'" 324 F.3d at 220 (quoting *Bell Fuel Corp. v. Cattolico*, 544 A.2d 450, 457 (Pa. Super. Ct. 1988)).

[20]     As noted above, eMove has also offered to pay these fees.

that the Third Circuit, in concert with the other circuit courts, has held that "arising out of" and

"relating to" language is broad in nature.

The Pennsylvania Supreme Court has adopted a "presumption of arbitrability," according

to which motions to compel arbitration should be granted unless it may be said with "positive

assurance" that the arbitration clause involved is not susceptible to an interpretation that covers

the asserted dispute. *See Battaglia v. McKendry*, 233 F.3d 720, 725 (3d Cir. 2000) (citing

*Lincoln Univ. of Com. Sys. of Higher Ed. v. Lincoln Univ. Chapter of Am. Ass'n of Univ.*

*Professors*, 354 A.2d 576, 581–82 (Pa. 1976)). The presumption of arbitrability "is particularly

applicable where the arbitration clause at issue is broad." *Id.*

Here, the arbitration provision at issue is "the quintessential broad arbitration provision,

that directs to arbitration any controversy or claim 'arising out of' or 'related to' the agreement."

*See Renfrew Centers, Inc. v. UNI/CARE Sys. Inc.*, 920 F. Supp. 2d 572, 574 (E.D. Pa. 2013).[21]

As Defendants point out, the Third Circuit has observed that "when phrases such as 'arising

under' and 'arising out of' appear in arbitration provisions, they are normally given broad

construction." *See Battaglia*, 233 F.3d at 727. Further, district courts within this circuit have

determined that arbitration clauses similar to that at issue here apply to statutory claims. *See*

*Kane v. Advanced Integrated Techs. Grp., Inc.*, No. CIV. A. 07-269, 2007 WL 1237926, at *4

(E.D. Pa. Apr. 25, 2007) (finding an arbitration clause to be "broad in scope" when it "[swept]

into its reach '[a]ny controversy, claim or dispute arising out of or relating to the agreement'"

and finding that the clause applied to plaintiff's claims under Pennsylvania's Wage Payment and

Collection Law); *Tripp v. Renaissance Advantage Charter Sch.*, No. CIV.A. 02–9366, 2003 WL

---

[21]     Although *Renfrew* and other cases cited in this paragraph applied federal law to the scope
of the arbitration clauses at issue, "there is no meaningful difference between federal and
Pennsylvania law when reviewing the scope of an arbitration clause." *See State Farm Mut. Auto.*
*Ins. Co. v. Coviello*, 233 F.3d 710, 713 n.1 (3d Cir. 2000).

22519433, at *3 (E.D. Pa. Oct. 8, 2003) (concluding that a plaintiff's Fair Labor Standards Act claim fell within an arbitration clause in her employment agreement stating that "[a]ll disputes arising out of or concerning this Agreement shall be submitted to binding arbitration").

Here, the eMove Agreement established and governed the relationship between Kauffman and eMove, including among other things Kauffman's employment status and the terms of his payment. Kauffman's claims in this lawsuit, all of which concern his employment status and payment, "aris[e] out of or relat[e] to" the eMove Agreement.

**D.    U-Haul and Collegeboxes can enforce the arbitration clause.**

Finally, Kauffman contends that U-Haul and Collegeboxes cannot enforce the arbitration clause because they were not signatories to the eMove Agreement. Kauffman contends that the eMove Agreement was between only himself and eMove, and he observes that the Agreement contains a "no third-party beneficiaries clause," which expressly states that "[n]o person other than the parties hereto, shall have any rights or claims under this Agreement."

As Defendants point out, however, Kauffman alleges in his Complaint that "[a]lthough eMove and Collegeboxes purport to be separate from [U-Haul], in reality, [U-Haul], eMove and Collegeboxes are one and the same company since they act as an integrated enterprise, alter egos of each other and as a single or joint employer: that is, U-Haul." Compl. ¶ 12. In short, according to the Complaint, eMove, U-Haul, and Collegeboxes "are one and the same" and, as a result, the third-party beneficiary issue does not arise. Further, as Defendants also point out, under the doctrine of equitable estoppel, "a plaintiff who treats the non-signatory and signatory party as jointly liable for the same alleged conduct is estopped from resisting arbitration with the nonsignatory." *See Hautz Const., LLC v. H & M Dep't Store*, No. CIV. 12-3478 FLW, 2012 WL

5880370, at *14 (D.N.J. Nov. 20, 2012). Accordingly, U-Haul and Collegeboxes may enforce the Agreement.

**E.      The Court will stay this action pending arbitration.**

Although the Federal Arbitration Act requires that a court stay an action pending arbitration only where a party has requested a stay, *see* 9 U.S.C. § 3,[22] "Section 7304(d) of the Pennsylvania Arbitration Act requires a stay of judicial proceedings where an issue is referred to arbitration," *AAL Investments, LLC v. Tsioles*, 2015 WL 7301700, at *4 (Pa. Super. Ct. Apr. 1, 2015). Accordingly, the Court will stay this action pending the resolution of the arbitration proceedings.

**V.      Conclusion**

For the reasons set forth above, Defendants' Motion to Compel Arbitration is granted, but the Court severs those provisions of the eMove Agreement providing that each party bear its own arbitration expenses and that eMove can recover the attorneys' fees associated with its motion to compel arbitration. The Court also severs the provision requiring the application of the AAA Commercial Arbitration Rules, but only insofar as those rules require Kauffman to pay arbitration fees and costs. The Court directs that eMove pay all such fees and costs. Finally, Court will stay this action pending arbitration. A separate order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[22]      In this case, neither party has requested a stay.