**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| MICHAEL KAUFFMAN, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 5:16-cv-04580 |
| | : | |
| U-HAUL INTERNATIONAL, INC., | : | |
| COLLEGEBOXES, LLC, and | : | |
| EMOVE, INC., | : | |
| Defendants. | : | |
| | : | |

**O P I N I O N**

**Joseph F. Leeson, Jr.**                                                              **April 24, 2019**
**United States District Judge**

Plaintiff Michael Kauffman ("Plaintiff" or "Kaufmann") and Defendants U-Haul

International, Inc. ("UHI"), Collegeboxes, LLC ("Collegeboxes"), and eMove, Inc., ("e-Move"

and collectively with UHI and Collegeboxes, "Defendants"), submitted Joint Proposed Findings

of Facts and Conclusions of Law, ECF No. 45, in support of their motion for approval of the

parties' settlement pursuant to this Court's April 3, 2019 Order, ECF No. 44. The following

sections are taken substantially from the parties' Joint Proposed Findings of Facts and

Conclusions of Law.

**Procedural History**

1.      On or around August 23, 2016, Plaintiff initiated this Action by filing a

Complaint on behalf of himself and those similarly situated against UHI, Collegeboxes, and

eMove (collectively "Defendants"). ECF No. 1. In the Complaint, Plaintiff alleges the following

four causes of action against all Defendants: (1) violations of the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201 et seq.; (2) violations of the Pennsylvania Minimum Wage Act, 43

P.S. § 333.101 et seq. ("PMWA"); (3) violations of the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 et seq. ("PWPCL"); and (4) unjust enrichment. *Id.*

2.     The gravamen of Plaintiff's complaint was that Defendants misclassified him as an independent contractor and that he is owed overtime for work performed in excess of 40 hours per week. *See, id.,* Complaint ¶¶ 22-35.

3.     On August 28, 2018, the Court entered an Order granting Defendants' Motion to Compel Individual Arbitration of Plaintiff's claims pursuant to an arbitration agreement entered into by Plaintiff and Defendants containing a class and collective action waiver. ECF No. 34.

4.     The Parties subsequently reached an agreement ("Settlement Agreement") and on March 25, 2019, filed a Joint Motion to Approve Settlement and to Dismiss with Prejudice. ECF No. 43.

5.     On April 3, 2019, the Court directed the Parties to submit joint findings of fact and conclusions of law with respect to the fairness of the settlement agreement. ECF No. 43.

### Findings of Fact

Plaintiff's Work for Defendants

6.     In or around December 2010, Plaintiff began working as a "Moving Helper," providing moving labor services to customers of Defendant eMove. A Moving Helper is an individual or business that provides moving labor services to customers who select the Moving Helper through e-Move's "movinghelp.com" website.

7.     Plaintiff entered into an agreement with eMove (the "eMove Agreement"), which provided all of the "terms and conditions" applicable to the contractual relationship between a Moving Helper, like Plaintiff, and eMove.

8.      Pursuant to the eMove Agreement, Moving Helpers, including Plaintiff, are not employees.

9.      Plaintiff provided moving services through his independently owned companies "Kauffman's Moving" and "Affordable Moving."

10.     Neither Plaintiff nor his companies were on eMove's payroll.

11.     Plaintiff was paid on a per trip basis, not on an hourly, daily or salaried basis.

12.     Plaintiff was responsible for paying his own taxes.

<u>The Settlement</u>

13.     During the period following the Court's order compelling arbitration, the parties, through their counsel, engaged in settlement negotiations and ultimately reached an agreement ("Settlement Agreement") through which Plaintiff agreed to settle his claims in this case.

14.     During the negotiation process, Plaintiff provided an estimation of overtime wages claimed should he prevail in the arbitration. Plaintiff reasonably believed that if he prevailed entirely on all his claims and recovered all potential penalties, his claim could be worth $60,000.

15.     Pursuant to the terms of the settlement, after significant negotiation, Defendants agreed to pay Plaintiff the sum of $25,000, which is allocated $16,750 to Kauffman, and $8,250 for attorneys' fees and costs.

16.     The Parties have entered into the Settlement Agreement as a compromise to avoid the costs, risks, and distractions from litigation.

17.     The Settlement Agreement is the compromise of disputed claims and does not constitute an admission by Defendants of any violation of any federal, state, or local statute or

regulation, or any violation of any of Plaintiff's rights or of any duty owed by Defendants to Plaintiff.

## Conclusions of Law

<u>General Principles Pertaining to Judicial Review of FLSA Settlements</u>

18.     A court is required to review a FLSA settlement to ensure it "'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Cuttic v. Crozer-Chester Medical Center*, 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012) (Robreno, J.) (quoting *Lynn's Food Stores, Inc. v. United States Dept. of Labor*, 679 F.2d 1350, 1354-55 (11th Cir. 1982)); *see also Bettger v. Crossmark, Inc.*, No. 1:13-CV-2030, 2015 WL 279754, at *4 (M.D. Pa. Jan. 22, 2015).

19.     "[A] district court may enter a stipulated judgment if it determines that the compromise reached 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Brumley v. Camin Cargo Control, Inc.*, No. CIV.A. 08-1798 JLL, 2012 WL 1019337, at *2 (D.N.J.Mar. 26, 2012)(*citing Lynn's Food Stores*, 679 F.2d at 1354). Accordingly, courts must determine whether (i) the settlement concerns a bona fide dispute; (ii) the settlement is fair and reasonable to the Plaintiff-employee; and (3) does not frustrate the implementation of the FLSA. *Gabrielyan v. S.O. Rose Apartments LLC*, No. 15-CV-1771 (CCC-MF), 2015 WL 5853924, at *2 (D.N.J. Oct. 5, 2015).

20.     The Third Circuit has instructed that when analyzing these factors, a court must be mindful of the strong public policy in favor of settlements . *See e.g., Farris v. JC Penny Co., Inc.*, 176 F.3d 706, 711 (3d Cir. 1999). Typically, Courts regard the adversarial nature of a litigated FLSA case to be an adequate guarantor of fairness. *Lynn's*, 679 F.2d at 1353-54.

Additionally, "a strong presumption of fairness attaches to proposed settlements that have been negotiated at armslength." *Thompson v. Metro Life Ins., Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003).

   A. *The Agreement Resolves a Bona Fide Dispute*

   21.   An agreement resolves a bona fide dispute when there is some doubt as to whether the plaintiff would succeed on the merits at trial. *Lynn's Food Stores*, 679 F.2d at 1354; *Bettger*, 2015 WL 279754, at *3; *Deitz v. Budget Renovations & Roofing, Inc.*, No. 4:12–CV–0718, 2013 WL 23338496 at *3 (M.D.Pa. May 29, 2013); *Collins v. Sanderson Farms, Inc.*, 568 F.Supp.2d 714, 719-20 (E.D.La. 2008).

   22.   Here, the parties dispute both liability and damages under the FLSA.

   23.   From Plaintiff's perspective, Kaufmann is misclassified and should be treated as an "employee."

   24.   From Defendants' perspective, Kaufmann (individually and through companies controlled by him) was a vendor providing services pursuant to written agreement. In addition, Defendants maintain that even if Plaintiff were to be treated as an employee, he is entitled to little or no compensable damages because: (a) he did not work more than 40 hours in a work week; (b) anytime worked in excess of 40 hours was *de minimus*; and (c) Defendants at all times acted in good faith.

   25.   These arguments would have persisted through discovery, dispositive motion practice and arbitration hearings, with each side arguing their respective positions to the Court. Thus, the bona fide dispute factor is satisfied here. *See e.g., Lynn's*, 679 F.2d at 1353-54; *deMunecas v. Bold Food, LLC*, No. 09 CIV. 00440 DAB, 2010 WL 3322580, at *17 (S.D.N.Y. Aug. 23, 2010)(adversarial nature demonstrated bona fide dispute between the parties).

B. *The Proposed Settlement is Fair and Reasonable*

26.     Plaintiff's recovery under the Agreement represents a reasonable compromise to his claims. Specifically, Defendants disputed their liability on these claims asserting that: (1) as a matter of well-established law, including but not limited to the NLRB's most recent decision in *SuperShuttle DFW, N.L.R.B.*, 16-RC-010963 (January 25, 2019), Plaintiff is an independent contractor; (2) as a matter of well-established law Defendants were not joint employers; and (3) Plaintiff received all compensation due and owing and thus is entitled to no recovery.

27.     Even if Plaintiff prevailed establishing employment status at arbitration, he still would have to prove that he was entitled to unpaid overtime, liquidated damages, attorneys' fees and costs. Plaintiff would have faced legal hurdles for establishing liability and damages.

28.     Both the factual underpinnings of Plaintiff's claims and Plaintiff's legal right to FLSA coverage are seriously contested. *See Lynn's Food Stores*, 679 F.2d at 1354; *Deitz*, 2013 WL 23338496, at *3; *Collins*, F.Supp.2d at 719–20. As such the Settlement Agreement facilitates the compromise of a *bona fide* dispute, rather than the "mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food Stores*, 679 F.2d at 1354.

29.     Beyond this, the cost of litigating the issues of employment status in the evolving gig economy alone would dwarf the monetary value of any potential recovery. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir.2001) ("This factor captures the probable costs, in both time and money, of continued litigation.").

30.     Furthermore, as recognized in *Bettger*, the relative expense of further litigation in a case which no longer involves class claims "weighs strongly in favor of settlement." *Bettger v. Crossmark, Inc.*, 2015 WL 279754, at *7.

31.     The settlement here carries other indicia of fairness.

32.     Throughout the process, Plaintiff was represented by competent counsel experienced in wage-and-hour class litigation. Furthermore, the Settlement Agreement was consummated after investigation, so that the Parties were fully informed of the legal issues and evidence. Under the proposed settlement, Plaintiff will receive payment of a meaningful portion (approximately 28%) of his alleged unpaid overtime wages, as well as attorneys' fees and costs. *See, e.g., Mehling v. N.Y. Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2006) (approving settlement that represented 20% of best possible recovery and noting courts that have approved settlements with even lower ratios).

33.     As set forth above, courts look to the adversarial nature of a case as an indicator of the fairness of the settlement. *Lynn's*, 679 F.2d at 1353-54; *Bredbenner v. Liberty Travel, Inc.*, No. CIV.A. 09-1248 MF, 2011 WL 1344745, at *16 (D.N.J. Apr. 8, 2011). Here, this matter has been hotly contested and briefed to date and, absent settlement the matter would continue to be vigorously contested, through appeals.

34.     Plaintiff will receive his settlement monies money promptly, avoiding the risks and delay inherent in continued litigation. These factors clearly establish fairness. *Bredbenner*, 2011 WL 1344745, at *15-16.

C.   *The Settlement is Consistent with Public Policy and does not frustrate the implementation of the FLSA.*

35.     The FLSA mandates the payment of minimum wage and overtime by employers to employees. The FLSA does not apply to non-employees, independent contractors and vendors. The Settlement Agreement does not frustrate the implementation of the FLSA because the

parties have reached agreement to resolve their dispute as to the threshold and fundamental issue of whether Plaintiff is covered by the FLSA.

36.     Finally, as set forth above, the Third Circuit recognizes a strong public policy in favor of settlements, since "they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by courts*." D.R. by MR. v. East Brunswick Bd. of Educ.*, 109 F.3d 896, 901 (3d Cir. 1997).

37.     The settlement here is consistent with that policy because it resolves a pending dispute, avoids arbitration and further court involvement, and possible appeals.

38.     Because the Settlement Agreement represents a fair settlement of a bona fide dispute, public policy weighs heavily in favor of approval. *See also Farris,* 176 F.3d at 711.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge